UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES ANDERSON,

                              Plaintiff,

                                                          9:07-cv-1257
v.                                                        (DNH/GHL)

DOCTOR KOOI, Auburn Correctional Facility;
LESTER WRIGHT, Chief Medical Officer, Auburn
Correctional Facility; Ms. COLLETTE, Assistant
Medical Officer, Auburn Correctional Facility;
MICHAEL PETTIGRASS, Auburn Correctional
Facility,

                              Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

James Anderson
Plaintiff *Pro Se*
96-A-7820
Coxsackie Correctional Facility
Box 999
Coxsackie, NY 12051


HON. ERIC T. SCHNEIDERMAN                      C. HARRIS DAGUE, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

1

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff James

Anderson alleges that Defendant Pang Kooi provided inadequate medical care to Plaintiff, and

that such care amounted to deliberate indifference to Plaintiff's serious medical needs.  (Dkt. No.

8.)  Plaintiff further alleges that Defendants Lester Wright and Holly Collette were deliberately

indifferent by failing to rectify the alleged constitutional violations after learning of them.  *Id.*

Finally, Plaintiff accuses Defendant Michael Pettigrass of medical indifference and defamation

by including certain statements on Plaintiff's disciplinary and quarterly reports.  *Id.*  Currently

pending before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule

of Civil Procedure 56(b).  (Dkt. No. 39.)  Plaintiff has not filed a response.  For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.    BACKGROUND

### A.    Summary of Plaintiff's Complaint

Plaintiff is currently confined at Coxsackie Correctional Facility ("Coxsackie").  (Dkt.

No. 8 at 1.)  The events giving rise to this action occurred during his confinement at Auburn

Correctional Facility ("Auburn").  *Id.* at 2.  Plaintiff suffers from ankylosing spondylitis[1] and

other arthritic conditions that cause severe pain.  *Id.* at 2.  Defendant Kooi is a physician at

Auburn and the facility's health services director, Defendant Wright is the Chief Medical Officer

for the New York State Department of Correctional Services ("DOCS"), Defendant Collette is a

---

[1]  Ankylosing spondylitis (also known as Marie-Strumpell Disease) is a "form of rheumatoid arthritis that affects the spine . . . producing pain and stiffness as a result of inflammation of the . . . joints."  *McArthur v. Comm'r of Soc. Sec.*, No. 3:06-CV-860 (LEK/DRH), 2008 WL 4866049, at *4 n.5 (N.D.N.Y. Nov. 7, 2008) (citation omitted).

Regional Health Administrator for DOCS, and Defendant Pettigrass is a Correction Counselor at Auburn.  (Dkt. No. 39-2 ¶ 3.)

       1.     <u>Claims Against Defendant Kooi</u>

Plaintiff was transferred from Green Haven Correctional Facility ("Green Haven") to Auburn on September 3, 2004.  (Dkt. No. 8 at 2.)  From September 3 to September 7, Plaintiff was held in the infirmary and kept in an "extremely cold room," which exacerbated his condition. *Id.* at 3.  Upon admission to the infirmary, Plaintiff told a nurse that, in addition to vitamins, he required twenty milligrams of OxyContin twice a day to treat his illnesses.  *Id.*

On September 7, Plaintiff was released from the infirmary.  *Id.*  Upon his release, Defendant Kooi ceased the OxyContin treatment without providing a detoxification program even though Defendant Kooi knew that Plaintiff had been dependant on opiates for the past five to six years.  *Id.*  In place of OxyContin, Defendant Kooi prescribed Motrin.  *Id.*

Six days later, on September 13, Plaintiff requested OxyContin, Ensure, vitamins, and pads for his Transactional Electrical Nerve Stimulation ("TENS") Unit.[2]  *Id.* at 4.  Defendant Kooi then canceled a medical appointment that a nurse had made for Plaintiff.  *Id.*  Four days later, Plaintiff saw another nurse to tell her about his upcoming appearance before Auburn's programming committee.  *Id.* at 4.  Plaintiff expected the nurse to inform Defendant Kooi about the upcoming committee appearance.  *Id.*  Defendant Kooi, rather than providing medication, placed Plaintiff on "medically unemployed status."  *Id.*

---

[2]  A TENS Unit "is a pocket size, portable, battery-operated device that sends electrical impulses to certain parts of the body to block pain signals. The electrical currents produced . . . can prevent pain messages from being transmitted to the brain and may raise the level of endorphins (natural pain killers produced by the brain)."  *Verhow v. Astrue*, No. 08-CV-6423-CJS, 2009 U.S. Dist. LEXIS 100836, at *25 n.5, 2009 WL 3671665, at *8 n.5 (W.D.N.Y. Oct. 29, 2009)

On September 20, Plaintiff had his first appointment with Defendant Kooi.  *Id.* at 5.  He requested OxyContin, multivitamins, Ensure, and TENS treatment pads because he was suffering from pain, Hepatitis C, and weight loss.  *Id.*  Defendant Kooi denied these requests even though Plaintiff said that those treatments had helped in treating his conditions in the past.  *Id.*  Plaintiff claims that when Defendant Kooi denied the treatment, Defendant Kooi said that Plaintiff "ran track for F.D.R. high school," which was over forty years ago, and that Plaintiff "could or did run" for one hour.  *Id.*

Plaintiff was examined by medical staff once again on September 24.  *Id.* at 5.  Plaintiff complained of paralysis in the extremities and severe muscle spasms.  *Id.*  He also stated that he had not received Trilisate (a painkiller) from the pharmacy even though Trilisate was supposed to have been ordered.  *Id.*  After receiving Trilisate, Plaintiff complained of adverse side effects, including nausea, dizziness, and vomiting.  *Id.* at 6.  He also stated that he had sciatica and that the pain had extended into his neck and hip.  *Id.*  Plaintiff requested a second opinion but Defendant Kooi had canceled Plaintiff's appointment with another physician.  *Id.* at 6.

On October 6 and 14, Plaintiff repeated his complaint that Trilisate was bothering his stomach, and he renewed his requests for Ensure and OxyContin.  *Id.* at 6.  Defendant Kooi personally examined Plaintiff on October 21.  *Id.* at 6.  At this examination, Defendant Kooi refused to review the X-ray requisition form.  *Id.*  He also changed Plaintiff's height and weight on the ambulatory record.  *Id.*  Defendant Kooi smirked and made sarcastic remarks while instructing Plaintiff to complete exercises on a piece of paper.  *Id.*  Plaintiff made an appointment to see a physical therapist, and also requested a neurologist, Ensure, and a Hepatitis C profile.  *Id.*

Although Defendant Kooi told Plaintiff that he would receive Percocet, Plaintiff did not receive the drug. *Id.*

Complaining of pain and given no medication, Plaintiff saw a nurse on October 27. *Id.* at 7. Defendant Kooi examined Plaintiff the next day. *Id.* at 7. Plaintiff complained of back pain and withdrawal symptoms. *Id.* Defendant Kooi noted that Plaintiff coached a boxing team during his confinement at Green Haven Correctional Facility. *Id.* Plaintiff questioned the necessity of this notation because he used strong pain medication while he was a coach. *Id.*

On November 17, Dr. Scarpilla told Plaintiff that he needed to strengthen his back and that Plaintiff should receive a medical call out. *Id.* at 7. On November 26, Plaintiff was seen by a nurse who noted that Plaintiff's appointment with a doctor could not be found on the computer system. *Id.* This appointment was made by Defendant Kooi. *Id.* After reviewing Plaintiff's M.R.I., the nurse also sent a note to someone named Bobby instructing Bobby to schedule an appointment for Plaintiff in the orthopedic clinic as soon as possible. *Id.* Also on November 26, Defendant Kooi examined Plaintiff and acknowledged the recommendation of Dr. Scarpilla that Plaintiff needed level four medication. *Id.*

At a December 2 sick call, a nurse noted that Plaintiff was placed on Defendant Kooi's sick call list on November 12 but that appointment could not be found on the computer system. *Id.* Defendant Kooi, the only official with the authority to cancel call outs, had a long history of canceling call outs. *Id.*

Defendant Kooi examined Plaintiff again on December 9 and noted the need for another hepatitis profile. *Id.* Plaintiff had provided blood about twice a week since September 20. *Id.* Plaintiff, however, did not receive the results even though the results were available. *Id.*

5

On December 13, Mr. Comber, a physician's assistant, examined Plaintiff.  *Id.*  After reviewing Plaintiff's X-ray acquisition sheet, Mr. Comber described Plaintiff's spine as "mush." *Id.*  Plaintiff told Mr. Comber that Ultram was not controlling the pain, and Mr. Comber was "incredulous" that Plaintiff had not received narcotics.  *Id.*

Nine days later, Defendant Kooi examined Plaintiff and acknowledged that Plaintiff had a "degenerate Soinal Disorder."  *Id.*  Defendant Kooi also said that the Hepatitis C profile had yet to be completed.  *Id.*  Plaintiff requested Percocet, Morphine, or OxyContin.  *Id.*  Defendant Kooi told Plaintiff that he would be "called to a medication call out" but that call out did not occur.  *Id.* Against Plaintiff's wishes, Defendant Kooi then attempted to admit Plaintiff to the infirmary.  *Id.* Plaintiff objected because "bed rest" is the "last thing that someone with arthritis spine needs." *Id.*

Plaintiff made another request for pain relief on January 24.  *Id.*  One week later, Defendant Kooi told Plaintiff that the current "treatment" was not working, and Defendant Kooi placed Plaintiff on "medically unemployed" status.  *Id.* at 9.  In a February 8 examination, Defendant Kooi stated that Plaintiff could participate in only half of the educational programs and could not participate in work programs.  *Id.*

On February 28, Dr. Gracefo became Plaintiff's physician.  *Id.*  Plaintiff had made the request for this change in a January 5 grievance to the prison's grievance committee.  *Id.*  Dr. Gracefo replaced the Feldene and Flexeril with Ultram, a different painkiller.  *Id.* at 10.  He also ordered a liver profile and different blood pressure medication, and he made different shower arrangements for Plaintiff so that he could avoid the cold while going to take a shower.  *Id.* Defendant Kooi continued to refuse to prescribe narcotics leading to an argument between

6

Defendant Kooi and Dr. Gracefo.  *Id.*  Defendant Kooi and Dr. Gracefo had repeatedly argued

over Plaintiff's treatment, including Plaintiff's request for narcotics, Ensure, herbal teas, and

vitamins.  *Id.* at 11.

On January 4, 2006, Plaintiff was admitted to the infirmary after a hernia operation.  *Id.* at

10.  Four days later, Defendant Kooi discontinued the percocet treatment that Plaintiff had been

given following the operation.  *Id.*  Defendant Kooi also reduced the Ultram treatment from 100

milligrams twice a day to 50 milligrams twice a day, which Plaintiff claimed was inadequate to

treat his pain.  *Id.*  On January 27, Defendant Kooi resumed Plaintiff's treatment with Feldene

and Flexerin despite knowing that Plaintiff was allergic to such treatment.  *Id.*

Finally, in addition to suffering from severe pain associated with ankylosing spondylitis,

Plaintiff claims that he suffered mental anguish due to the conflicting reports about his hepatitis

status.  *Id.* at 20.

### 2.   Claims Against Defendants Wright and Collette

Plaintiff's family members contacted Defendant Wright on September 16, 2004,

requesting that Defendant Wright investigate the alleged medical indifference.  *Id.* at 13.

Defendant Wright responded that Plaintiff would have to submit medical release forms before

any investigation could begin.  *Id.*  On September 22, Plaintiff contacted Defendant Wright

regarding Defendant Kooi's treatment, and on September 24 Plaintiff submitted the medical

release forms.  *Id.*  Defendant Wright, however, did not take any further action even after further

requests to do so by Plaintiff's family members.  *Id.*

Plaintiff contacted Defendant Collette on September 22.  *Id.*  Defendant Collette was

"assigned the task of investigating" the alleged medical indifference.  *Id.* at 13-14.  Defendant

7

Collette "alluded that she [would go] to Auburn personally, and . . . see to it that [Plaintiff would] receive[] proper treatment." *Id.* at 13.  Defendant Collette failed to take these actions. *Id.* Finally, Plaintiff's brother and Defendant Collette had maintained regular phone conversations for several months regarding Plaintiff's medical treatment. *Id.* at 14.

### 3. Claims Against Defendant Pettigrass

Defendant Pettigrass started serving as Plaintiff's guidance counselor in September 2004. *Id.* at 14.  Defendant Pettigrass allegedly inserted two-year old misbehavior incidents into Plaintiff's quarterly reports. *Id.*  The insertion of these incidents into the quarterly reports prevented Plaintiff from being transferred, including any transfers to medical facilities. *Id.*

Plaintiff also alleges that Defendant Pettigrass entered the following onto Plaintiff's quarterly reports: "pay particular attention to charges 101.10, 101.11, 101.20, 101.21, 101.22." *Id.*  Those charges are for sexual misconduct. *Id.*  Plaintiff argues that this act of defamation endangered his life because the "penal environment is ever hungry and thirsty for gossip, innuendo and rumors." *Id.*

### B. Summary of Grounds in Support of Defendants' Motion

Defendants argue that (1) the Eleventh Amendment bars Plaintiff's claims against them in their official capacities; (2) Plaintiff cannot prevail on his Eighth Amendment inadequate medical care claim because Plaintiff received adequate medical care and it was Plaintiff who refused the treatment that Defendants provided; (3) Defendants Wright and Collette are not liable for the failure to intervene because Defendants' medical indifference claim is without merit; (4) Plaintiff does not allege sufficient personal involvement on the part of Defendant Wright; (5)

8

Plaintiff's defamation claim against Defendant Pettigrass is based on a faulty premise; and (6)

Defendants are entitled to qualified immunity.  (Dkt. No. 39-3.)

## II.      LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c)(2).  The party moving for summary judgment bears the initial burden

of showing, through the production of admissible evidence, that no genuine issue of material fact

exists.  Only after the moving party has met this burden is the non-moving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*,

467 F.3d 263, 272-73 (2d Cir. 2006).

The nonmoving party must do more than "rest upon the mere allegations . . . of his

pleading" or "simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).  Rather, a

dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).  In determining whether a genuine issue of material fact[3] exists, the Court must resolve

all ambiguities and draw all reasonable inferences against the moving party.  *Major League*

*Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

---

[3]  A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a plaintiff fails to respond to a defendants' motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, practically speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the defendants' motion, and (2) assure itself that, based on the *undisputed* material facts in the record, the law indeed warrants judgment for the defendants. *See id.*; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); N.D.N.Y. L.R. 7.1(b)(3).

Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts (its "Rule 7.1 Statement"), the facts as set forth in the Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram, Co.*, 373 F.3d 241, 243 (2d Cir. 2004); *Champion*, 76 F.3d at 486; N.D.N.Y. L.R. 7.1(a)(3);

Similarly, where a plaintiff has failed to respond to a defendant's properly filed and facially meritorious memorandum of law, the plaintiff is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court. Implied in this standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*. *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).

This is because even *pro se* plaintiffs must obey the Court's procedural rules.[4]  For example, this Court has consistently enforced Local Rule 7.1(a)(3)–and its predecessor, Local Rule 7.1(f)–by deeming facts set forth in a moving party's statement to have been admitted where the opposing party has failed to properly respond to that statement-even where the opposing party was proceeding *pro se* in a civil rights case.[5]  Here, however, in an abundance of caution, I have independently reviewed the entire record.

Where, as here, the Court chooses to conduct such an independent review of the record on an unopposed motion for summary judgment, any verified complaint filed by plaintiff should be treated as an affidavit.  *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") (citations omitted).  To be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, be

---

[4]  *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that the procedural rules in ordinary civil rights litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (citations omitted).

[5]  *See, e.g.*, *DeMar v. Car-Freshner Corp.*, 49 F. Supp. 2d 84, 86 n.1 (N.D.N.Y. 1999) (*pro se* civil rights case); *Costello v. Norton*, No. 96-CV-1634, 1998 U.S. Dist. LEXIS 16755, at *1 n.1, 1998 WL 743710, at *1 n.2 (N.D.N.Y. Oct. 21, 1998) (*pro se* civil rights case); *Squair v. O'Brien & Gere Eng'rs, Inc.*, No. 96-CV-1812, 1998 U.S. Dist. LEXIS 22114, at *2 n.2, 1998 WL 566773, at *1 n.2. (N.D.N.Y. Aug. 31, 1998) (*pro se* civil rights case); *see also Monahan v. N.Y. City Dep't of Corrs.*, 214 F.2d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1.(a)(3), in *pro se* civil rights case).

based on "personal knowledge."  Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must

be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant is competent to testify on the matters stated.").  An affidavit (or verified

complaint) is not based on personal knowledge if, for example, it is based on mere "information

and belief" or hearsay.  *Patterson*, 375 F.3d at 219; *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d

639, 643 (2d Cir. 1988); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970).

        In this case, Plaintiff's Amended Complaint includes a "declar[ation] under penalty of

perjury that the [facts alleged in the complaint are] true and correct."  (Dkt. No. 8 at 34.)  Further,

Plaintiff's Amended Complaint does not allege any matters "upon information and belief."  Thus,

Plaintiff's declaration "was the equivalent of an oath that would be given with respect to an

affidavit." *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001).  As such, the Amended

Complaint is a verified complaint and should be treated as an affidavit.  *Colon*, 58 F.3d at 872.

        While the Court will treat Plaintiff's Amended Complaint as an affidavit, such an

affidavit (or verified complaint) must still comply still comply with Rule 56(e).  For example,

such an affidavit (or verified complaint) must not be conclusory.  *See* Fed. R. Civ. P. 56(e)

(requiring that non-movant "set out specific facts showing that there is a genuine issue for trial");

*Patterson*, 375 F.3d at 219; *Applegate*, 425 F.2d at 97.  An affidavit is conclusory if, for

example, its assertions lack any supporting evidence or are too general.  *See Bickerstaff v. Vassar

Oil*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements, [like those made in affidavits, deposition

testimony, or trial testimony] that are devoid of any specifics, but replete with conclusions, are

insufficient to defeat a properly supported motion for summary judgment.") (citations omitted).

However, even where an affidavit (or verified complaint) is non-conclusory, it may be

insufficient to create a factual issue where it possesses the following two characteristics: (1) it

constitutes almost the sole or exclusive basis for a disputed issue of fact in the case (or,

expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so

lacking in credibility that, even after drawing all inferences in the light most favorable to the non-

movant, no reasonable jury could find for the non-movant because the testimony is complete

and/or replete with inconsistencies and improbabilities.  *See Jeffreys v. City of New York*, 426

F.3d 549, 554-55 (2d Cir. 2005); *Argus, Inc. v. Eastman Kodak Co.*, 804 F.2d 38, 42-46 (2d Cir.

1986); *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 612-15 (S.D.N.Y. 2004).

## III.    ANALYSIS

### A.    Claims Against Defendants in Their Official Capacities

Plaintiff has brought suit against Defendants in their individual capacities and in their

capacities as DOCS employees.  (Dkt. No. 8 at 26-28.)  Defendants move to dismiss the official-

capacity claims, arguing that any claims for damages against them in their official capacities are

barred by the Eleventh Amendment.  (Dkt. No. 39-3 at 8.)  While the text of the Eleventh

Amendment bars only suits against a state by a citizen of another state, the Supreme Court has

"repeatedly held" that the principle of sovereign immunity bars a citizen from bringing a suit

against his or her own state in federal court.  *See Tenn. Student Assistance Corp. v. Hood*, 541

U.S. 440, 446 (2004); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 267 (1997); *Hans v.

Louisiana*, 134 U.S. 1, 10-21 (1890); *see also* U.S. Const. amend. XI ("The Judicial power of the

United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State.").  State immunity extends not only to the states but also to state

agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71; *see also Yin Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the official capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

All DOCS employees are state officials for the purposes of the Eleventh Amendment. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *see also Tolliver v. N.Y. State Corr. Officers*, No. 99 Civ. 9555, 2000 U.S. Dist. LEXIS 11531, at *7, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000). Therefore, I recommend that the Court dismiss the claims for damages against Defendants in their official capacities.

### B.    Personal Involvement

Defendant Wright argues that he was not personally involved in any alleged unconstitutional conduct. (Dkt. No. 39-3 at 12-14.). A defendant's personal involvement "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*,  21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). To prevail, the plaintiff must show some tangible connection

14

between the alleged unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d

Cir. 1986).  Where a defendant is a supervisory official a mere "linkage" to the unlawful conduct

through "the prison chain of command" (i.e. under the doctrine of *respondeat superior*) is

insufficient to show his personal involvement in that unlawful conduct.  *Polk County v. Dodson*,

454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

Supervisory officials may not be held liable merely because they held a position of

authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory personnel may

be considered "personally involved" only if they (1) directly participated in the violation; (2)

failed to remedy that violation after learning of it through a report or appeal; (3) created, or

allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly

negligent in managing subordinates who caused the violation; or (5) exhibited deliberate

indifference to the rights of inmates by failing to act on information indicating that the violation

was occurring. *Colon*,  58 F.3d at 873 (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d

Cir.1986)).[6]

Plaintiff alleges that Defendant Wright failed to remedy Defendant's Kooi's medical

indifference after learning of the alleged violation from letters sent by Plaintiff and Plaintiff's

family.  (Dkt. No. 8 at 13; Dkt. No. 39-13 at 53-54.)  Defendant Wright then assigned Defendant

Collette to investigate Plaintiff's allegations.  (Dkt. No. 8 at 14.)

---

[6]  The Supreme Court's decision in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009),
arguably casts in doubt the continued viability of some of the categories set forth in *Colon*.  *See
Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009).  Here, the Court will assume
*arguendo* that all of the *Colon* categories apply.

15

Without more, even construing the facts in the light most favorable to Plaintiff, Plaintiff

has failed to allege, let alone establish, any factual basis upon which a jury could reasonably

conclude personal involvement by Defendant Wright.  First, the "mere receipt of letters from an

inmate by a [supervisory official] regarding a medical claim is insufficient to constitute personal

liability." *Gonzales v. Wright*, No. 9:06-CV-1424 (JMH), 2010 U.S. Dist. LEXIS 15953, at *28,

2010 WL 681323, at *10 (N.D.N.Y. Feb. 22, 2010) (citations omitted); *see also Booker v. Doe*,

No. 9:06-CV-73 (GLS), 2008 U.S. Dist. LEXIS 76413, at *22, 2008 WL 4527601, at *7

(N.D.N.Y. Sept. 30, 2008) ("It is now well-settled that the failure of a supervisory official to

investigate a letter of protest written by an inmate is not sufficient to show personal

involvement.").  Second, a supervisor's referral of a complaint to a subordinate for investigation

does not constitute personal involvement.  *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *see*

*also Wright v. Genovese*, 694 F. Supp. 2d 137, 161 (N.D.N.Y. 2010) (Baxter, Mag. J.).  Finally,

Defendant Wright's actions in telling Plaintiff's family members that Plaintiff would need to sign

medical release forms is not enough to subject Defendant Wright to personal liability.  *See*

*Joyner v. Greiner*, 195 F. Supp. 2d 500, 506-07 (S.D.N.Y. 2002) (holding that prison doctor's

response to plaintiff's letter does not demonstrate personal involvement); *Ramsey v. Coughlin*, 1

F. Supp. 2d 198, 204 (W.D.N.Y. 1998) (holding that plaintiff's claim that supervisor responded

to his letters is insufficient to establish personal involvement).[7]

---

[7]  It should be noted that some courts have held that personal liability may lie where a
"supervisor's 'involvement went beyond merely the receipt of complaint letters,' to 'responding,
explaining the treatment and defending the institution.'"  *Woods v. Goord*, No. 01 Civ. 3255
(SAS), 2002 U.S. Dist LEXIS 7157, at *27-31, 2002 WL 731691, at *7-9 (S.D.N.Y. Apr. 23,
2002) (internal citations omitted); *see also Rashid v. Hussain*, No. 95- Civ. 676, 1997 U.S. Dist.
LEXIS 16132, at *9-10, 1997 WL 642549, at *3 (N.D.N.Y. Oct. 15, 1997).

As such, I recommend granting Defendant Wright summary judgment on this ground.

**C.     Medical Indifference**

As a threshold matter, the Court rejects Defendants' contention that Plaintiff's medical indifference claim is based solely on the refusal to prescribe the narcotics that Plaintiff requested. (Dkt. No. 39-3 at 1.)  In addition to issues regarding treatment of Plaintiff's pain, Plaintiff has also raised allegations of deliberate indifference in regard to his weight loss.  (Dkt. No. 8 at 22.)

1.     Defendant Kooi

Plaintiff alleges that Defendant Kooi's refusal to prescribe narcotics and nutritional supplements amounted to deliberate indifference of Plaintiff's serious medical needs in violation of the Eighth Amendment.  (Dkt. No. 1.)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle*, 429 U.S. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care.  *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious

medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (citations omitted), *accord*, *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03. This "inquiry must be tailored to the specific circumstances of each case." *Smith*, 316 F.3d at 185.

For the purposes of their motion, Defendants do not challenge Plaintiff's assertion that ankylosing spondylitis a serious medical condition. (Dkt. No. 39-3 at 9.) Instead, they argue that Plaintiff has failed to allege that Defendants acted with deliberate indifference. *Id.*

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Farmer v. Brennan*, 511 U.S. at 835. To establish deliberate indifference, an inmate must prove that (1) a prison medical

care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.*

Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F.3d at 703. As such, in a summary judgment motion, the critical question is whether a reasonable jury could conclude that Defendants "knew of and disregarded an excessive risk to [Plaintiff's] health and safety and that [Defendants were] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (internal quotation marks and alterations omitted).

In this case, Plaintiff has failed to establish that Defendant Kooi acted with deliberate indifference in treating Plaintiff's pain. Throughout the six-month period in question, Defendant

Kooi examined Plaintiff on at least eight separate occasions.  (Dkt. No. 39-4 ¶ 26; Dkt. No. 39-5 at 5, 7-8, 10-13.)  The ambulatory health record also shows that medical staff examined Plaintiff on approximately sixty separate occasions between August 2004 and May 2006.  (Dkt. No. 39-5.) Plaintiff also received a number of different pain relievers and muscle relaxants, including Trilisate, Ibuprofen, Feldene, Flexeril, Ultram, and Alamag.  (Dkt. Nos. 8, 39-4, 39-5.)  In addition to medication, Plaintiff was granted use of the TENS Unit to help alleviate his pain.  *Id.* Rather than showing a "conscious disregard" to Plaintiff's serious medical needs, the record demonstrates that medical staff adequately responded to Plaintiff's complaints.  (Dkt. No. 39-5.) Even if the prescribed treatments were not successful in alleviating Plaintiff's pain, it cannot be said that Defendant Kooi acted with deliberate indifference.  *See Williams v. Koenigsmann*, No. 03 Civ. 5267 (SAS), 2004 U.S. Dist. LEXIS 2346, at *18-19, 2004 WL 315279, at *6 (S.D.N.Y. Feb. 18, 2004).

Although the record contains several instances where Plaintiff disagreed with Defendant Kooi's judgment, "[d]ifferences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's 'serious' medical needs."  *Wright*, 694 F. Supp. 2d at 160 (citing cases); *see also Chance*, 143 F.3d at 703 ("mere disagreement over proper treatment does not create a constitutional claim").  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.  Defendant Kooi was also entitled to his own medical judgment regarding Plaintiff's addiction to narcotics.  *See Wright*, 694 F. Supp. 2d at 160 ("concern about prescribing narcotic pain medication, on which inmates with possible substance abuse issues

20

could become dependent, may inform a medical judgement about what drug to prescribe").  Here,

Defendant Kooi, who had been a doctor with DOCS for over twenty years, believed that Plaintiff

had addiction issues.  (Dkt. No. 39-4 ¶ 21.)  His medical judgment is further bolstered by

Plaintiff's own admission that he had been addicted to percocet for at least three and a half years.

(Dkt. No. 39-13 at 35-37.)  Moreover, even if other doctors, as Plaintiff argues, disagreed with

Defendant Kooi's prescribed treatment, Defendant Kooi is entitled to his own medical judgment

and the mere fact that he disagreed with other medical professionals is insufficient to show

deliberate indifference even if Defendant Kooi's judgment was misguided or negligent.  *See*

*Ortiz v. Makram*, No. 96 Civ. 3285, 2000 U.S. LEXIS 18428, at *34, 2000 WL 1876667, at *10

(S.D.N.Y. Dec. 21, 2000).

       The Amended Complaint also contains allegations of three medical call-outs or

appointments, including one with a specialist, that Defendant Kooi canceled.  (Dkt. No. 8 at 4, 6-

7.)  Although these cancellations may show negligence or medical malpractice, they do not rise

to the level of an Eighth Amendment violation as a "delay in medical treatment does not

necessarily invoke the Eighth Amendment."  *Morrison v. Mamis*, No. 08 Civ. 4302 (PAC) (AJP),

2008 U.S. Dist. LEXIS 106416, at *25 n.19, 2008 WL 5451639, at *7 n.19 (S.D.N.Y. Dec. 18,

2008) (Peck, Mag. J.).  Delayed treatment amounts to deliberate indifference when "officials

deliberately delayed care as a form of punishment; ignored a 'life-threatening and

fast-degenerating' condition for three days; or delayed major surgery for over two years."  *Id.*

(citing *Demata v. New York State Corr. Dep't of Health Servs.*, No. 99-0066, 198 F. 3d 233

(table), (published in full-text format at 1999 U.S. App. LEXIS 22955, at *5, 1999 WL 753142,

at *2 (2d Cir. Sept. 17, 1999)).  Here, any delay in treatment does not rise to the level of

deliberate indifference.  In fact, after each cancellation, Plaintiff was subsequently examined by medical personnel within a short period of time.  For example, Plaintiff was seen by medical personnel on September 17, just four days after a cancellation on September 13.  (Dkt. No. 8 at 4.)  Likewise, Plaintiff was examined by a nurse on October 6 following a call-out cancellation on September 30.  *Id.* at 6.  And after a purported cancellation on December 2, Plaintiff was examined by Defendant Kooi on December 9.  *Id.* at 7.  Further, not providing Plaintiff with the second medical opinion that he requested does not amount to an Eight Amendment violation.  *See Tafari v. Stein*, No. 01CV0841, 2009 U.S. Dist. LEXIS 10256, at *26, 2009 WL 331378, at *7 (W.D.N.Y. Feb. 11, 2009) (Scott, Mag. J.) ("The Constitution does not require that an inmate receive a particular course of treatment, or that an inmate see a requested specialist.") (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997), *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993)); *Scott v. Laux*, No. 07-CV-936, 2008 WL 4371778, at *4 (N.D.N.Y. Sept. 18, 2008) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim.").

Plaintiff also accuses Defendant Kooi of continuing the Feldene and Flexeril treatment even though Defendant Kooi knew that Plaintiff had adverse side effects, which Plaintiff characterizes as an allergy, to those medications.  (Dkt. No. 8 at 11.)  This accusation, while not addressed by Defendant Kooi, is conclusory and lacks any supporting evidence.  *See Bickerstaff*, 196 F.3d at 452.  For example, there is no indication that Plaintiff's side effects or allergic reactions amounted to a serious medical condition.  In fact, it is unknown how any adverse affects manifested themselves.  Without more, it cannot be said that Defendant Kooi's actions amounted to deliberate indifference.  *See Bryant v. Wright*, No. 09 Civ. 2456 (GBD) (GWG),

2010 U.S. Dist. LEXIS 96539, at *24, 2010 WL 3629443, at *8 (S.D.N.Y. Aug. 31, 2010) ("The mere fact that the generic medication has 'side effects,' . . . is certainly insufficient to state a deliberate indifference claim . . . .") (Gorenstein, Mag. J.).

Finally, Plaintiff's refusal of the prescribed treatment further negates allegations of deliberate indifference. *See Gillard v. Rovelli*, No. 9:09-CV-0860 (NAM/GHL), 2010 U.S. Dist. LEXIS 124737, at *28, 2010 WL 4905240, at *10 (N.D.N.Y. Sept. 29, 2010) (Lowe, Mag. J.) (citing *Rivera v. Goord*, 253 F. Supp. 2d 735, 756 (S.D.N.Y. 2003)).  On October 24, 2004, Plaintiff signed a Refusal of Medical Examination and/or Treatment Form stating: "I refuse to stay in the infirmary.  The doctor has released me and I realize that I cannot be monitored as closely in population as I could if I stayed but I still wish to leave."  (Dkt. No. 39-7.)  This refusal occurred after Defendant Kooi had examined Plaintiff on October 21.  (Dkt. No. 8 at 7.)  On December 22, after requesting morphine and Percocet from Defendant Kooi, Plaintiff refused admission to the medical unit for bed rest and observation.  (Dkt. No. 39-5 at 12.)  Plaintiff also started physical therapy on December 8 but Plaintiff failed to appear for three of the five sessions that were scheduled during the time relevant to this suit.  (Dkt. No. 39-6.)  While Plaintiff might have refused the prescribed treatment because he disagreed with them, prisoners are not afforded the medical treatment of their choice.  *Chance*, 143 F.3d at 703.  Thus, Plaintiff's refusal of the prescribed treatment negates his claim of deliberate indifference.

Accordingly, I recommend that Defendant Kooi be granted summary judgment to the extent that Plaintiff's deliberate indifference claim is based on treatment for pain.[8]

---

[8]  Interspersed throughout the Second Amended Complaint are allegations regarding conflicting reports on Plaintiff's hepatitis status.  Although unaddressed by Defendants, the allegations do not state a deliberate indifference claim.  In fact, it is unclear if Plaintiff even has hepatitis.  A

Plaintiff has also alleged that Defendant Kooi's failure to provide nutritional supplements, including multivitamins, Ensure, and herbal teas caused a dramatic weight loss of approximately thirty pounds or one-fifth of Plaintiff's body weight. (Dkt. No. 8 at 5, 22.) While weight loss alone may not constitute a serious medical condition, rapid weight loss or weight loss coupled with other conditions may present a serious medical condition. *See, e.g.*, *Kaminsky v. Rosenblum*, 929 F.2d 922, 924 (2d Cir. 1991) (high blood pressure, diabetes, angina, gout and an enlarged spleen held to be serious medical needs, particularly in light of prisoner's extreme weight loss). Because this issue remains unaddressed by Defendants and because it is unclear from the record whether this weight loss occurred rapidly or whether it was exacerbated by the ankylosing spondylitis, I find that a genuine issue of fact remains on whether the weight loss is a serious medical condition. Moreover, it is unclear if Defendant Kooi or other medical staff treated Plaintiff's weight loss at all. Plaintiff has alleged that Defendant Kooi changed Plaintiff's weight on the ambulatory record from 123 pounds to 137.5 pounds. (Dkt. No. 8 at 6.) In light of

---

printout of a medical report indicates that Plaintiff tested negative for Hepatitis C but appearing right next to that typed-text are the handwritten words "Hep C" accompanied with a positive symbol. (Dkt. No. 8-1 at 57.) Moreover, Plaintiff argues that he tested positive for Hepatitis C in 2001 but that he did not learn of it until 2004. There are no allegations, however, that Defendants were deliberately indifferent in treating this condition. Even if Plaintiff had Hepatitis C there are no indications that any delay in diagnosis or treatment endangered Plaintiff. *See Gonzalez v. Coughlin*, Nos. 9:94CV1119, 9:97CV3202008, U.S. Dist. LEXIS 45076, at *20-21, 2008 WL 2385948, at *7 (N.D.N.Y. June 9, 2008) (finding no deliberate indifference to inmate's serious medical needs where "four years after [inmate] first tested positive for Hepatitis C and three years after he learned of his diagnosis, plaintiff did not require treatment due to the slow progression of his disease"). Plaintiff also argues that Defendant Kooi ignored Plaintiff's potential liver damage (as a result of the alleged hepatitis) when prescribing painkillers but there are no indications that Plaintiff suffered any adverse affects as Plaintiff indicates that his liver test results between September 2004 and June 2006 "were deemed 'good-excellent.'" (Dkt. No. 8 at 21.) Finally, the Amended Complaint also contains discussions regarding Plaintiff's hypertension. The record, however, is devoid of any allegations that Defendants acted with deliberate indifference in treating Plaintiff's high blood pressure.

24

Defendant Kooi's failure to respond to this accusation or provide any discussion on this issue, I find that a genuine issue of material fact exists as to whether Defendant Kooi was deliberately indifferent to a potentially serious medical need.

Therefore, I recommend that Defendant Kooi be denied summary judgment to the extent that the Amended Complaint alleges deliberate indifference based on rapid weight loss and the failure to provide nutritional supplements.

### 2.    Defendant Collette

Plaintiff further alleges that Defendant Collette was deliberately indifferent to his serious medical needs by failing to rectify the alleged unconstitutional conduct after conducting an investigation.  (Dkt. No. 8 at 13.)  Defendant Collette might have exhibited deliberate indifference had she failed to act on information indicating that Defendant Kooi was violating Plaintiff's constitutional rights.  *See Colon*, 58 F.3d at 873 (citing *Williams v. Smith*, 781 F.2d at 323-24).  As I discussed above, however, the record does not show that constitutional violations were occurring with regard to treatment for Plaintiff's pain.  Thus, Defendant Collette's intervention was not required.  As such, I recommend that Defendant Collette be granted summary judgment to the extent that it is based on the treatment for Plaintiff's pain.

However, as I also discussed in the section immediately above, I find that genuine issues of material facts exists as to whether the deprivation of nutritional supplements and herbal teas violated the Eighth Amendment.  In light of that finding, I recommend denying Defendant Collette summary judgment to the extent that the Amended Complaint is based on that issue.

### 3.    Defendant Pettigrass

Plaintiff alleges that he could not receive proper medical care because the two-year old misbehavior incidents that Defendant Pettigrass noted on Plaintiff's records prevented transfers to medical facilities.  (Dkt. No. 8 at 15.)  Although Defendant Pettigrass has not addressed this argument, Plaintiff's allegation does not support a claim of medical indifference as it is too conclusory and lacks any supporting evidence.  *See Bickerstaff*, 196 F.3d at 452.  Neither the Amended Complaint nor the record contain any factual allegations (or disputes) that Plaintiff did in fact receive inadequate medical care as a result of the misbehavior reports.

As such, Defendant Pettigrass should be granted summary judgment on the medical indifference claim.

**D.    Defamation**

Plaintiff also accuses Defendant Pettigrass of defamation by falsely accusing Plaintiff of sexual misconduct.  (Dkt. 8 at 15-16.)  Generally, a state defamation action by government officials "cannot be converted into a federal action for loss of liberty under the Due Process Clause of the Fourteenth Amendment."  *Patterson v. City of Utica*, 370 F.3d 322, 328 (2d Cir. 2004); *see also Paul v. Davis*, 424 U.S. 693, 709 (1976).  "Section 1983 requires that the alleged conduct violate a constitutionally safeguarded right."  *Venable v. Goord*, No. 03 Civ. 4434 (RMB), 2004 U.S. Dist. LEXIS 18275, at *13, 2004 WL 2033069, at *5 (S.D.N.Y. Sept. 7, 2004) (citing *Savage v. Snow*, 575 F. Supp. 828, 837 (S.D.N.Y. 1983)).  Thus, Plaintiff has failed to allege a section 1983 violation.

"In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion."  *Butler v. LaBarge*, No. 9:09-cv-1106 (GLS/DRH), 2010 U.S. Dist. LEXIS 104701, at *9, 2010 WL 3907258, at *3

(N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)).  When all federal claims are eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *See Kolari*, 455 F.3d at 122.  But a court may choose to exercise jurisdiction if a state law claim raises an important question of federal policy.  *See id.* at 122-23.  Here, Plaintiff has failed to establish a federal claim or an important issue of federal policy.  Thus, in light of my recommendation that the Court dismiss Plaintiff's federal claim against Defendant Pettigrass, I recommend that the Court decline to exercise pendent jurisdiction over Plaintiff's state law claim of defamation.

### E.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity.  (Dkt. No. 39-3 at 16.) The affirmative defense of qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997)).

A qualified immunity inquiry in prisoner civil rights cases generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted); *accord, Higazy v. Templeton*, 505 F.3d 161, 169 n.8 (2d Cir. 2007) (citations omitted).  The right to be free from deliberate indifference to serious medical needs is a clearly established constitutional right.  *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998)

(citing *Estelle*, 429 U.S. at 104).   Whether particular acts are objectively reasonable, however, is

a highly fact-specific inquiry.   *See Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

Thus, the defense is unavailable and summary judgment is inappropriate where "the objective

reasonableness of defendants' actions turns on disputed questions of fact."   *Id.* at 927.   To

establish the qualified immunity defense, defendants "must show that it was 'objectively

reasonable' . . . for them to believe that they had not acted with the requisite deliberate

indifference."   McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004) (quoting *Ford v.*

*McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).

As I discussed above, a reasonable jury could conclude that Defendant Kooi acted with

deliberate indifference in failing to provide Plaintiff with the nutritional supplements.   Likewise,

a reasonable jury could also conclude that Defendant Collette acted with deliberate indifference

in failing to correct the constitutional violation after learning of it.   Thus, a jury could conclude

that their actions were not objectively reasonable.   Accordingly, I recommend that Defendants

Kooi's and Collette's motion for summary judgment on qualified immunity grounds be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Defendants' motion for summary judgment (Dkt. No. 43) be

**GRANTED IN PART** and **DENIED IN PART**, and it is further

**ORDERED** that the clerk provide copies of *Demata v. New York State Corr. Dep't of*

*Health Servs.*, No. 99-0066, 198 F. 3d 233 (table), (published in full-text format at 1999 U.S.

App. LEXIS 22955, at *1, 1999 WL 753142, at *1 (2d Cir. Sept. 17, 1999); *Gonzales v. Wright*,

No. 9:06-CV-1424 (JMH), 2010 U.S. Dist. LEXIS 15953, at *1, 2010 WL 681323, at *1

(N.D.N.Y. Feb. 22, 2010); *Bryant v. Wright*, No. 09 Civ. 2456 (GBD) (GWG), 2010 U.S. Dist.

28

LEXIS 96539, at *1, 2010 WL 3629443, at *1 (S.D.N.Y. Aug. 31, 2010); *Gillard v. Rovelli*, No.

9:09-CV-0860 (NAM/GHL), 2010 U.S. Dist. LEXIS 124737, at *1, 2010 WL 4905240, at *1

(N.D.N.Y. Sept. 29, 2010); *Butler v. LaBarge*, No. 9:09-cv-1106 (GLS/DRH), 2010 U.S. Dist.

LEXIS 104701, at *1, 2010 WL 3907258, at *1 (N.D.N.Y. Sept. 30, 2010); *Tafari v. Stein*, No.

01CV0841, 2009 U.S. Dist. LEXIS 10256, at *1, 2009 WL 331378, at *1 (W.D.N.Y. Feb. 11,

2009); *Verhow v. Astrue*, No. 08-CV-6423-CJS, 2009 U.S. Dist. LEXIS 100836, at *1, 2009 WL

3671665, at *1 (W.D.N.Y. Oct. 29, 2009); *Gonzalez v. Coughlin*, Nos. 9:94CV1119,

9:97CV3202008, U.S. Dist. LEXIS 45076, at *1, 2008 WL 2385948, at *1 (N.D.N.Y. June 9,

2008); *Scott v. Laux*, No. 07-CV-936, 2008 WL 4371778, at *1 (N.D.N.Y. Sept. 18, 2008);

*Booker v. Doe*, No. 9:06-CV-73 (GLS), 2008 U.S. Dist. LEXIS 76413, at *1, 2008 WL 4527601,

at *1 (N.D.N.Y. Sept. 30, 2008); *McArthur v. Comm'r of Soc. Sec.*, No. 3:06-CV-860

(LEK/DRH), 2008 WL 4866049, at *1 (N.D.N.Y. Nov. 7, 2008); *Morrison v. Mamis,* No. 08

Civ. 4302 (PAC) (AJP), 2008 U.S. Dist. LEXIS 106416, at *1, 2008 WL 5451639, at *1

(S.D.N.Y. Dec. 18, 2008); *Williams v. Koenigsmann*, No. 03 Civ. 5267 (SAS), 2004 U.S. Dist.

LEXIS 2346, at *1, 2004 WL 315279, at *1 (S.D.N.Y. Feb. 18, 2004); *Venable v. Goord*, No. 03

Civ. 4434 (RMB), 2004 U.S. Dist. LEXIS 18275, at *1, 2004 WL 2033069, at *1 (S.D.N.Y.

Sept. 7, 2004); *Tolliver v. N.Y. State Corr. Officers*, No. 99 Civ. 9555, 2000 U.S. Dist. LEXIS

11531, at *1, 2000 WL 1154311, at *1 (S.D.N.Y. Aug. 14, 2000); *Ortiz v. Makram*, No. 96 Civ.

3285, 2000 U.S. LEXIS 18428, at *1, 2000 WL 1876667, at *1 (S.D.N.Y. Dec. 21, 2000);

*Woods v. Goord*, No. 01 Civ. 3255 (SAS), 2002 U.S. Dist .LEXIS 7157, at *1, 2002 WL 731691,

at *1 (S.D.N.Y. Apr. 23, 2002); *Squair v. O'Brien & Gere Eng'rs, Inc.*, No. 96-CV-1812, 1998

U.S. Dist. LEXIS 22114, at *1, 1998 WL 566773, at *1 (N.D.N.Y. Aug. 31, 1998); *Costello v.*

29

*Norton*, No. 96-CV-1634, 1998 U.S. Dist. LEXIS 16755, at *1, 1998 WL 743710, at *1 (N.D.N.Y. Oct. 21, 1998); *Rashid v. Hussain*, No. 95-Civ. 676, 1997 U.S. Dist. LEXIS 16132, at *1 1997 WL 642549, at *1 (N.D.N.Y. Oct. 15, 1997), in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)..

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated:  January 24, 2011
        Syracuse, New York

George H. Lowe
United States Magistrate Judge